JAMES TURNER AND RAY MURRAY v. L. L. MURPHREY HOG COMPANY

No. 798SC99

(Filed 16 October 1979)

**Trial § 40.1— confusing issue submitted to jury—new trial**

In an action to recover the purchase price of pigs delivered by plaintiff to defendant, defendant is entitled to a new trial where one issue submitted to the jury was so confusing that the jury was unable to determine whether any pigs weighing less than forty pounds were delivered to defendant, and such determination was necessary in order to arrive at the amount owed plaintiff by defendant.

APPEAL by defendant from *Bruce, Judge.* Judgment entered 1 September 1978 in Superior Court, LENOIR County. Heard in the Court of Appeals on 27 September 1979.

Plaintiffs in this civil action are partners engaged in raising feeder pigs for market. For the past several years, they have been selling their pigs to defendant on a regular basis. In their complaint, plaintiffs alleged that, on 23 July 1976, they sold defendant "three loads of feeder pigs weighing 9,220 pounds for a price of $70.38 per hundred pounds"; that defendant accepted delivery of the pigs and "immediately mixed the said pigs with other stock belonging to the corporation"; and that defendant has refused to pay the $6,489.04 they contend is due them. Answering the complaint, defendant admitted delivery and acceptance of the pigs, but contended that it "tendered to the Plaintiff, Ray Murray, the sum of [$5,704.56], being the market price of said pigs; and, therefore, Plaintiffs have been fully paid and satisfied."

On 31 August 1978, a final pretrial conference was held at which the parties stipulated that the three weight certificates (numbers 10173, 10156, and 10157) prepared by defendant when the pigs were delivered on 23 July 1976 would be admissible by both plaintiff and defendant. At trial plaintiff offered the testimony of Ray Murray which tended to show the following:

Plaintiffs Murray and Turner have been partners since 1970 and have been delivering pigs once or twice a month to defendant since "the latter part of 1970 or the first part of 1971." The amount of money due plaintiff was determined by averaging the weight of all pigs delivered in a week's time and calculating the

Turner v. Hog Co.

price according to the Wallace-Chadbourn Market scale. Murray testified that he weighed the pigs in a group — "probably . . . 35 or 40 hogs at each time" — before delivery and then defendant would weigh them again at his [defendant's] place of business. Plaintiff would receive a weight certificate for each load of pigs when delivered. Sometimes he was paid on the spot; other times defendant mailed him a check a few days later.

On 23 July 1976 Murray said he delivered three loads of pigs to defendant's company. The first load contained 60 pigs and, according to both plaintiff and defendant, totalled 2,960 pounds for an average weight of 49.33 pounds. Sixty pigs were delivered in the second load, weighing a total of 3,050 pounds for an average weight of 50.83 pounds. Weight certificates numbers 10156 and 10157, introduced by plaintiff, show these figures for the first two loads.

The third load of pigs delivered on that day contained sixty-nine pigs, totaling 3,210 pounds. Some of the pigs in this load were smaller, and plaintiff had separated them by putting a division in the trailer he used to haul them. When plaintiff arrived with this load at defendant's operation near Maury, defendant's son-in-law and employee Larry Barrow "asked me to wait and let him keep [the smaller pigs] separate so that he would not have to separate them later." Thus, plaintiff "ran those off on the platform first . . . and then we unloaded the rest."

Plaintiff was not paid at the time. According to his calculations, however, the total weight of the three loads of pigs (which were all the pigs he delivered that week) was 9,220 pounds; the average weight was 48.78 pounds. The Wallace-Chadbourn Market for that week quoted a price of "$70.83 per hundred weight for the 40 to 50 pound category. . . ." Thus, plaintiff calculated that he was due $6,489.04. He received a check five days later for $5,704.56.

Plaintiff also received a copy of the weight certificates prepared by Barrow for each load. Number 10173 showed the total weight for the third load to be 3,210 pounds, and the number of pigs to be 69. However, "[t]here are some figures on . . . number 10173 but I did not make them. Mr. Murphrey told me that those figures represented that they had pulled out 34 pigs and reweighed them."

Plaintiff refused to cash the check. Instead, he returned it to defendant and asked for the rest of the money. Defendant told him that "he could not [pay any more] because there was too much weight difference in the pigs . . . that 34 of the pigs were too light, that is below 40 pounds." Plaintiff asserted that "[n]one of the pigs in the third load was under 40 pounds."

Both plaintiff and defendant testified that it was not an acceptable practice either between them or in the business to sell pigs weighing less than forty pounds, and that there is no market quotation for pigs under forty pounds.

Defendant offered the testimony of three witnesses who testified in substance as follows:

Pigs weighing less than forty pounds are not sold on the regular market "because they are too light to take the stress of moving and buyers do not demand them." Such pigs would be sold separately and would bring five-to-ten cents less per hundred weight than pigs in the forty-to-fifty pound category.

Barrow testified that the first thing he observed about the third load of pigs delivered on 23 July 1976 was the divider in the trailer, and then "I noticed that there was a large difference in looking at the pigs. . . . The pigs in the first division were heavier, even heavier than the individual hogs in the first two loads . . . [and] much larger than those in the second division." He kept the two groups separated and, after plaintiff left, called Murphrey to ask "if he had any special agreement with Mr. Murray . . . and he said that he did not." Murphrey came out to look at the pigs, and they reweighed the smaller group. According to Barrow and Murphrey, the thirty-four smaller pigs in the third load weighed 1,280 pounds and averaged 37.65 pounds. The remaining thirty-five pigs totaled 1,930 pounds for an average of 55.14 pounds.

Murphrey testified that, in calculating the amount due plaintiffs for the three loads of pigs delivered that day he, "treated the first two loads and the half of the third load, that is the 35 pigs, together. That is, I averaged them together and then treated the 34 pigs . . . separately." Accordingly, he paid $60.50 per hundred weight for the two and a half loads whose average weight fell into the fifty-to-sixty-pound category. For the thirty-four pigs for

which no market price was quoted on the Wallace-Chadbourn scale, he paid the price for pigs in the forty-to-fifty-pound bracket, although he had "never agreed with Mr. Murray to buy or accept pigs under 40 pounds." Thus, "[w]e actually overpriced the pigs", arriving at a total amount of $5,704.56. Murphrey said that he offered to return the smaller pigs or, alternatively, all 189 pigs delivered on July 23, but that plaintiff would not agree to settle the dispute in such a manner.

At the close of the evidence, the following issues were submitted to and answered by the jury as indicated:

1. Did the plaintiffs and the defendant intend that no pigs weighing less than 40 pounds would be included in the sale on July 23, 1976?

ANSWER: Yes.

2. Were 34 pigs weighing less than 40 pounds delivered in the third lot of pigs on July 23, 1976?

ANSWER: No.

3. Did the defendant give notice of rejection of the third lot of pigs for failure to conform to the Contract within a reasonable time after delivery of the pigs on July 23, 1976?

[NO ANSWER. The third issue was not reached because of the jury's negative answer to the second issue.]

In accordance therewith, the trial judge calculated that the defendant was indebted to the plaintiff in the amount of $6,489.04. From a judgment that plaintiff have and recover such sum of the defendant, defendant appealed.

*Turner and Harrison, by Fred W. Harrison, for plaintiff appellees.*

*Lewis, Lewis and Lewis, by John M. Martin, for defendant appellant.*

HEDRICK, Judge.

By assignments of error numbers 3, 5 and 7, defendant asserts that the court erred in the issues submitted to the jury and the instructions given thereon. We focus our attention on the

second issue submitted. Defendant argues that this issue is confusing, and that the jury was confused by the judge's confusing instructions. We agree.

John Milton in *Paradise Lost* described Hell as, "Confusion worse confounded." The "hellish" position in which the participants to this comedy of errors found themselves is manifest in the colloquy between the jury and the judge when it returned to inquire:

> FOREMAN: A point has arisen on issue no. 2. Was there an average of 34 pigs weighing less or did each pig weigh less than 40 pounds?
>
> COURT: The question is: Were 34 pigs weighing less than 40 pounds delivered in the third lot of pigs on July 23, 1976?
>
> FOREMAN: Was it average or each?
>
> COURT: Each has nothing to do with average.
>
> The attorney has specified that 32 pounds, if that serves me right.
>
> That would mean that some were over 40 pounds to bring it down to 37 pounds. You have got to go on what your recollection is of the evidence and use your own logic and common sense. It doesn't make sense unless you rely on each.

Much of the confusion experienced by the judge and jury lies in the wording of the second issue. There is no evidence in this record that the plaintiff delivered thirty-four pigs to the defendant weighing less than forty pounds. Yet, an affirmative answer to the second issue would yield the absurd conclusion that the plaintiff delivered thirty-four pigs each averaging 1.176 pounds. The issue as stated by the court required the jury, if it was to make any sense whatsoever, to return a negative answer to the issue. Thus, the defendant was deprived of having the jury consider its evidence tending to show that at least some of the thirty-four pigs weighed less than forty pounds, for which there was no market.

The evidence of the plaintiff tends to show that not one pig weighing less than forty pounds was delivered to defendant. The evidence of the defendant, to the contrary, tends to show that

thirty-four of the pigs in the third load on July 23 had an average weight of 37.65 pounds. It is obvious therefore that at least one pig delivered that day weighed less than forty pounds. Since all of the evidence tends to show that no pigs weighing less than forty pounds were bought and sold as "feeder pigs" on the regular market, a genuine issue of material fact raised by the evidence, therefore, is whether the plaintiff on 23 July 1976 delivered any pigs weighing less than forty pounds to the defendant. A negative answer to this issue would resolve the controversy between the parties and enable the court to enter a judgment on the verdict for the plaintiff in an amount that could be calculated mathematically from known and uncontroverted facts. An affirmative answer, on the other hand, would bring into play other facts and other principles of law not discussed herein.

Since there must be a new trial, it is unnecessary to discuss other assignments of error brought forward and argued in defendant's brief.

New trial.

Judges CLARK and MARTIN (Harry C.) concur.